UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CISNEROS,<br><br>    Plaintiff,<br><br>v.<br><br>J. VANGILDER, et al.,<br><br>    Defendants. | Case No. 16-cv-00735-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 223 |
| DANIEL MANRIQUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>J. VANGILDER, et al.,<br><br>    Defendants. | Case No. 16-cv-01320-HSG<br><br>Re: Dkt. No. 225 |

Pending before the Court are the motions for attorneys' fees and costs filed in two related matters, *Cisneros v. Vangilder*, No. 16-cv-0735-HSG, Dkt. No. 223, and *Manriquez v. Vangilder*, No. 16-cv-1320-HSG, Dkt. No. 225. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. See Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** Plaintiff Manriquez's motion for attorneys' fees, and **DENIES** Plaintiff Cisneros' motion.

### I.    BACKGROUND

The parties are familiar with the facts of these cases, so the Court only briefly addresses them here. These cases arise out of an incident that occurred on June 4, 2015, at Pelican Bay State Prison, in which Defendant Justin Vangilder discharged a T-16 oleoresin capsicum ("OC") chemical grenade in the control booth of the housing unit where he was working. During trial,

1    Plaintiffs Daniel Cisneros and Daniel Manriquez testified that vapors from the chemical grenade
2    entered their cells, causing them pain and suffering.  Plaintiffs and their witnesses further testified
3    that prisoners were yelling "man down," a term used in the prison to solicit help from the guards,
4    but that Defendants, Pelican Bay corrections officers, ignored their repeated requests for medical
5    attention and the opportunity to exit their cells and decontaminate.

6    Based on these facts, Plaintiffs asserted both state and federal law claims against
7    Defendants Justin Vangilder, Juan Vasquez, and Scott Cupp.  Plaintiffs brought a negligence
8    claim under California law against Defendants Vangilder and Vasquez.  *See Cisneros*, No. 16-cv-
9    0735-HSG, Dkt. No. 55 at ¶¶ 38–41.  Plaintiffs also brought a claim against Defendants
10   Vangilder, Vasquez, and Cupp under 42 U.S.C. § 1983, alleging that Defendants violated
11   Plaintiffs' rights under the Eighth Amendment to be free from cruel and unusual punishment when
12   Defendants were deliberately indifferent to a substantial risk of serious harm to and/or a serious
13   medical need of Plaintiffs.  *See id.* at ¶¶ 50–55.  On June 21, 2019, the jury returned a verdict in
14   favor of both Plaintiffs.  *See id.*, Dkt. No. 206; *see also Manriquez*, No. 16-cv-1320-HSG, Dkt.
15   No. 209.  The jury (1) found Defendant Vangilder was negligent, and awarded Plaintiffs $1,000
16   each in damages to compensate Plaintiffs for their claims against him; (2) found Defendant
17   Vazquez was both negligent and deliberately indifferent, and awarded Plaintiffs $1,500 each in
18   damages to compensate Plaintiffs for their claims against him; and (3) found Defendant Cupp was
19   deliberately indifferent, and awarded Plaintiffs $2,500 each in damages to compensate them for
20   their claims against him.  *Id.*

21   Following the trial, the Court granted Defendant Cupp's renewed motion for judgment as a
22   matter of law, finding that he was entitled to qualified immunity.  *See Cisneros*, No. 16-cv-0735-
23   HSG, Dkt. No. 220; *see also Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 222.  Final judgment was
24   therefore entered in favor of each Plaintiff against Defendants Vangilder (in the amount of $1,000)
25   and Vasquez (in the amount of $1,500).  *See Cisneros*, No. 16-cv-0735-HSG Dkt. No. 221; *see*
26   *also Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 223.  Each Plaintiff was therefore awarded
27   $2,500 total.  *Id.*

28   Counsel for Plaintiffs now move for attorneys' fees as prevailing parties under both federal

and California law.  *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 223; *see also Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 225.

## II. DISCUSSION

Defendants do not appear to dispute that some award of attorneys' fees is warranted given Plaintiffs' success at trial.  *See generally Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 224; *Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 226.  Rather, the parties disagree on what is a reasonable fee.  Here, Plaintiff Cisneros seeks $454,137.30 and Plaintiff Manriquez seeks $467,425 in attorneys' fees.  *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 223 at 1; *Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 225 at 1.  In support of their motions, Plaintiffs invoke both California Code of Civil Procedure § 1021.5 and 42 U.S.C. § 1988.  However, Plaintiffs appear to recognize that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, imposes certain limits on the amount of attorneys' fees that the Court may award under § 1988.  Plaintiffs therefore seek to recover the full amount of their requested fees under § 1021.5 as prevailing parties with respect to their negligence claims.  *See, e.g.*, *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 228 at 8–9; *Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 231 at 10.

### A. California Code of Civil Procedure § 1021.5

#### i. Legal Standard

Under California Code of Civil Procedure § 1021.5, courts may, in their discretion, award attorneys' fees to "successful parties" in order to encourage parties to bring cases in the public interest if:

> (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons; (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate; and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Code Civ. P. § 1021.5; *see also Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (Cal. 2004), *as modified* (Jan. 12, 2005).  "The doctrine rests on the recognition that privately initiated lawsuits, while often essential to effectuate important public policies, will as a practical matter frequently be infeasible without some mechanism authorizing courts to award fees." *Vasquez v.*

3

*State of California*, 45 Cal. 4th 243, 250 (Cal. 2008), *as modified* (Dec. 17, 2008). As the California Supreme Court has explained, "the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." *Graham*, 34 Cal. 4th at 565.

California has identified four requirements for awarding fees under § 1021.5: (1) a plaintiff must be a successful party in an action resulting in the enforcement of an important right affecting the public interest; (2) a significant benefit, whether pecuniary or nonpecuniary, must have been conferred on the general public or a broad class of persons; (3) the necessity and financial burden of private enforcement must transcend the litigant's personal interest in the controversy; and (4) such fees should not in the interest of justice be paid out of the recovery. *See Vasquez*, 45 Cal. 4th at 250–51. The Court has considerable discretion in deciding whether to award fees. *See id.* at 251.

### ii.   Analysis

The jury found that both Defendants Vangilder and Vazquez were negligent under California law, and that this negligence was a substantial factor in causing harm to Plaintiffs. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 206; *see also Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 209. Defendants appear to suggest as an initial matter that attorneys' fees under § 1021.5 are nevertheless unavailable because the jury also found that Defendant Vasquez was deliberately indifferent, in violation of the Eighth Amendment, and Plaintiffs cannot differentiate the time that counsel spent litigating the state law versus federal claims. *See, e.g.*, *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 224 at 13–14. Defendants suggest that awarding attorneys' fees under § 1021.5 would thus circumvent the PLRA. *See id.*

In support of this assertion, Defendants cite a single, district court case, *Pierce v. County of Orange*, No. 01-cv-0981 MLGx, 2009 WL 10716219 (C.D. Cal. Nov. 24, 2009). In *Pierce*, the plaintiffs had succeeded on "identical federal and state constitutional claims," and the court explained that plaintiffs had "made no attempt to show that any hours their attorneys spent in this case were devoted to state law claims such that they would not be compensable under § 1988 and the PLRA, but would be compensable under section 1021.5." *Id.* at *8. The court acknowledged

that state law usually governs "the method of calculating attorney's fees when a plaintiff prevails on both state and federal claims," but concluded that awarding fees under § 1021.5 would undermine the PLRA, which caps attorneys' fees for attorneys representing prisoners in order to reduce the amount of frivolous prisoner litigation. *Id.* at *8–9 (citing *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995)). But unlike in *Pierce*, Plaintiffs in these cases prevailed on distinct state law causes of action for negligence. There is, therefore, an independent state law basis for the verdicts and $2,500 monetary awards against Defendants Vangilder and Vazquez. Defendants have not cited, and the Court is not aware, of any cases holding that an award of attorneys' fees under § 1021.5 would be improper under such circumstances. Moreover, the Ninth Circuit has since clarified that in passing the PLRA:

> Congress did not . . . intend to discourage the collection of awards in those comparatively few meritorious cases in which the district court had found that the prisoner's constitutional rights had been violated and that the prisoner was entitled to collect damages for that violation. The majority of these actions result in low-damage awards for the prisoner, but can affect substantial change in the prison conditions or prisoner treatment.

*Woods v. Carey*, 722 F.3d 1177, 1182, & n.5 (9th Cir. 2013); *cf. Kelly v. Wengler*, 822 F.3d 1085, 1099–100 (9th Cir. 2016) (holding that "the PLRA allows enhancement of the lodestar figure in appropriate circumstances," thus allowing district courts to award fees that surpass the PLRA "cap"). Far from being frivolous, this case is one of the "relatively few" in which "prisoners obtain[ed] an award of monetary damages." *Woods*, 722 F.3d at 1183. The Court therefore does not find that the PLRA bars a separate award of attorneys' fees under § 1021.5 for Plaintiffs' state law claims, where Plaintiffs otherwise meet the statutory requirements. *Accord Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1019 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) (declining to apply the reasoning in *Pierce* to limit the recovery of fees under California law based on the PLRA).

Because all parties essentially appear to agree—and the Court finds—that ensuring Plaintiffs are protected from and receive adequate care following any unintentional exposure to OC constitutes a sufficiently important right affecting the public interest, as required under

1  § 1021.5, the Court only addresses the remaining three prongs under the statute. *See, e.g.*,

2  *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 226 at 9.

### a. Significant Benefit to the Public or Large Class of Persons

Here, Plaintiffs contend that their successful verdicts benefit a large class of persons—namely, inmates—in two significant ways. *First*, Plaintiffs argue that Defendants used this as a "test case" for future cases involving indirect exposure to OC. *Second*, Plaintiffs posit that "wardens, jailers, and corrections officers throughout California now know it is both negligent and unconstitutional to ignore pods full of prisoners who have been indirectly exposed to OC in the manner that occurred in this case." *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 225 at 12. Plaintiffs thus argue that at minimum, all California Department of Corrections and Rehabilitation ("CDCR") prisoners benefited from the results of these cases. *Id.*

Of course, "the public always derives a 'benefit' when illegal private or public conduct is rectified." *See Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 939 (Cal. 1979). However, § 1021.5 does not authorize an award of fees "in every lawsuit enforcing a constitutional or statutory right." *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 635 (Cal. Ct. App. 1998). Rather, an of award attorney fees under § 1021.5 is appropriate only when the public benefit is "significant," based on "a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." *Woodland Hills*, 23 Cal. 3d at 940. In considering such circumstances, "[t]he evidence of the size of the population benefitted by a private suit is not always required. The substantial benefit may be conceptual or doctrinal, and need not be actual and concrete, so long as the public is primarily benefitted." *Planned Parenthood v. Aakhus*, 14 Cal. App. 4th 162, 171–72 (Cal. Ct. App. 1993) (noting that "[a]lthough fundamental constitutional rights are by nature individual rights, their enforcement benefits the entire public").

As a threshold matter, the parties disagree as to whether the Court may consider Plaintiffs' proffered evidence that Defendants treated this as a "test case" for indirect OC exposure. *Compare Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 225 at 12, *with* Dkt. No. 228 at 3–4. But the Court need not consider the alleged statements that Defendants intended to use these cases as a test

to find that Plaintiffs' verdicts benefited a large group of people.  During trial, and in opposition to the pending motions, Defendants urged that "this lawsuit was not whether existing policy was appropriate, but whether individual correctional staff followed policy."  *See, e.g.*, *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 224 at 9–10.  In closing, Defendants further downplayed the physical effects that Plaintiffs experienced from the OC and highlighted the steps that Defendants took to clean up the OC discharge.  *See id.*, Dkt. No. 213 (Tr. Vol. IV) at 725:1–728:6.  Counsel also suggested that Plaintiffs and the other inmates "all had sinks in their cells with cool, running water" and "they could have used it to wash their face."  *See id.* at 736:22–25.  Counsel thus concluded that "[a]dequate ventilation was provided and the chemical agent was appropriately, and per policy, cleared out of the unit."  *See id.* at 725:20–21.

But this conclusion is belied by the record.  Despite Defendants' arguments to the contrary, the jury found by a preponderance of the evidence that Defendants Vangilder and Vazquez were negligent.  The jury further found that Defendant Vasquez:

- Was aware that Plaintiffs suffered harmful effects from exposure to OC;
- Knew that Defendants' ventilation efforts were inadequate; and
- Purposefully refused to provide Plaintiffs with a shower, medical care, or self-decontamination procedure.

*See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 206 at 2–3, 5–6.  To the extent that Defendants acted "per policy" following Plaintiffs' indirect exposure to OC, *see* Tr. Vol. IV at 725:20–21, the jury found that such policies are insufficient.

Defendants suggest that this was simply an isolated incident without broader implications. *See, e.g.*, *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 224 at 10.  Yet Defendants' own witnesses testified at trial about the frequency with which chemical agents like OC are used in CDCR facilities.  *See, e.g.*, *id.*, Dkt. No. 209 ("Tr. Vol. III") at 321:13–21, 498:20–499:20.  Several of the cases that Defendants cite in their briefing further highlight that indirect exposure to chemical agents is not uncommon among inmates.  *See, e.g.*, *Clement v. Gomez*, 298 F.3d 898, 901 (9th Cir. 2002) (finding material dispute of fact regarding claim of deliberate indifference to medical needs where guards used pepper spray to break up fight, which affected nearby "bystander" prisoners);

7

*Roberts v. Gonzalez*, No. CV 12-2044-JVS DTB, 2013 WL 4663882, at *7–8 (C.D. Cal. Mar. 5, 2013), *report and recommendation adopted*, No. CV 12-2044-JVS DTB, 2013 WL 4663551 (C.D. Cal. Aug. 29, 2013) (rejecting dismissal of deliberate indifference claim where plaintiffs alleged they were denied medical attention after pepper spray was discharged near their cell). CDCR currently has approximately 95,000 men and women in custody.[1] And even if the benefit from these cases does not extend beyond Pelican Bay State Prison, that location houses approximately 1,900 inmates.[2]

The Court therefore concludes, given all the circumstances, that Plaintiffs' verdicts have larger implications beyond Plaintiffs' individual cases and provided significant benefits to a large class of persons. *Cf. Daniels v. McKinney*, 146 Cal. App. 3d 42, 50 (Cal. Ct. App. 1983) (finding that lawsuit provided significant benefit to large class of persons where it changed the defendants' behavior regarding the amount of weekly exercise to which pretrial detainees are entitled).

### b. Financial Burden of Private Enforcement

Plaintiffs similarly argue that their litigation costs transcend their personal interests in these cases because this was a "test case" for CDCR. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 223 at 4–5. Defendants respond that Plaintiffs only sought monetary relief, and therefore their interests in bringing these cases were purely personal. *See id.*, Dkt. No. 224 at 11–12.

"Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." *See Beach Colony II v. California Coastal Com.*, 166 Cal. App. 3d 106, 114 (Cal. Ct. App. 1985). Thus, when the primary effect of a lawsuit "was to advance or vindicate a plaintiff's personal economic interests, an award of fees under § 1021.5 is improper." *See Flannery*, 61 Cal. App. 4th at 635. "Instead, [the statute's] purpose is to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a

---

[1] *See* CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, Weekly Population Report, https://www.cdcr.ca.gov/research/wp-content/uploads/sites/174/2021/01/Tpop1d210127.pdf (last visited February 1, 2021).
[2] *See* CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, Reports and Statistics for Pelican Bay State Prison, https://www.cdcr.ca.gov/research/wp-content/uploads/sites/174/2021/01/Tpop1d210120.pdf (last visited February 1, 2021).

significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate." *Id.* (quotation omitted). An award of fees is appropriate "when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake in the matter." *See Woodland Hills*, 23 Cal. 3d at 941. This prong therefore has two parts: (1) the necessity of private enforcement; and (2) the financial burden of private enforcement. *See Conservatorship of Whitley*, 50 Cal. 4th 1206, 1214 (Cal. 2010).

As to the first question, the need for private enforcement here is self-evident where Plaintiffs, inmates at Pelican Bay State Prison, brought this action against the prison employees who they believed bore responsibility for the OC discharge incident and response, and who Defendants state acted according to "policy." Again, Defendants suggest that private enforcement was not necessary because "there has been no evidence that current policy is somehow deficient." *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 224 at 12. Yet as discussed above, Defendants may have argued at trial that that they followed policy and that this policy was sufficient, but the jury disagreed.

The Court further finds that the financial burden of private enforcement far outweighs Plaintiffs' personal stake in these cases. Although Plaintiffs sought and received individual monetary damages, this is not dispositive. Rather, the critical inquiry is whether the financial burden in bringing these cases was disproportionate to their personal stake.[3] The California Supreme Court has instructed that to assess a plaintiff's individual benefit, "[t]he trial court must first fix—or at least estimate—the monetary value of the benefits obtained by the successful litigants themselves." *See Conservatorship of Whitley*, 50 Cal. 4th at 1215 (quotation omitted). And "[o]nce the court is able to put some kind of number on the gains actually attained it must discount these total benefits by some estimate of the probability of success at the time the vital litigation decisions were made." *Id.* (quotation omitted).

---

[3] To the extent that Defendants also argue that to recover under § 1021.5, Plaintiffs had to request injunctive relief, Defendant has not cited, and the Court has not found, any case supporting such a narrow construction of the statute. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 224 at 11–12.

Here, each Plaintiff was awarded a total of $2,500 after the Court granted Defendant Cupp's renewed motion for judgment as a matter of law. *See Cisneros*, No. 16-cv-0735-HSG Dkt. No. 221; *Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 223. From the outset, Plaintiffs valued their individual damages quite modestly. In January 2018, shortly after the Court appointed them, Plaintiffs' counsel offered to settle these cases for $5,000, including all fees and costs. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 223 at 8–9; *Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 225-1 at ¶ 10. Three months later, Plaintiffs' counsel offered to settle the case for $17,236, again including all fees and costs. *See, e.g.*, *Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 225-1 at ¶ 10, & Ex. A. Even at trial, Plaintiffs reiterated that they "didn't file this case to get rich," that "[t]his case is not about money," and instead this case is "about accountability, plain and simple." *See* Tr. Vol. IV at 696:24–697:4. Accordingly, Plaintiffs only requested an award of $5,000 each. *See id.* at 714:2–715:2. Such a modest request is consistent with the transient nature of the harm caused by the OC discharge. As Plaintiffs' counsel summarized at trial, Plaintiffs experienced fifteen to thirty minutes of acute pain and panic, that included difficulty breathing, as well as "coughing, gagging, [] retching, [] teary eyes, [and] mucous." *See id.* at 701:1–9; *see also id.*, Dkt. No. 208 at 52:6–53:15, 217:12–218:8. And although "they were still feeling the effects when they went to bed" later that night, the worst of their symptoms were during this first thirty minutes. *See* Tr. Vol. IV at 701:1–9. To be clear, the Court does not minimize the significance of even temporary harm. But even without discounting the benefits that Plaintiffs received by the probability of their success, Plaintiffs' likely personal financial benefit from these cases was always minimal.

In contrast, the legal fees incurred in litigating these cases were significant. The Court appointed counsel in August 2017, but despite several settlement attempts, the parties litigated through trial. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 48; *Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 42. After two years of motions practice and discovery, the trial was held in June 2019, and the hearing on Defendants' posttrial motions was held in December 2019. As discussed in more detail in Section II.A.ii.d below, during this time counsel for Plaintiff Cisneros expended over 1,200 hours of work, requesting a total of $454,137.30, and counsel for Plaintiff Manriquez

10

expended over 1,100 hours of work, requesting a total of $467,425 in attorneys' fees. Plaintiffs' counsel capably litigated these cases through trial, without any assurance that their fees would be paid. Counsel represented Plaintiff Cisneros in this matter *pro bono*. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 223 at 5. And counsel represented Plaintiff Manriquez under a contingency fee agreement in which counsel could elect to take only those attorneys' fees awarded by the Court. *See Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 225-1 at ¶ 19, & Ex. E. But competent counsel often comes at a high price, and prisoners with legitimate civil rights claims should not be discouraged from pursuing their claims with the assistance of counsel. Had counsel not agreed to represent Plaintiffs *pro bono* and on contingency, the value of the recovery for Plaintiffs' fifteen to thirty minutes of pain and panic would not have justified the costs in litigating these cases. The Court finds this prong readily satisfied.

### c. The Interest of Justice

Lastly, Plaintiffs contend that the interest of justice requires that the attorneys' fees not be paid out of Plaintiffs' recovery. *See, e.g.*, *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 223 at 5. Plaintiffs highlight their modest recovery, which represents only a tiny fraction of the attorneys' fees incurred. *See id.* The Court agrees. Plaintiffs argued to the jury that these cases were intended to hold Defendants accountable, rather than to recoup substantial monetary damages. *See* Tr. Vol. IV at 696:24–697:4. Their request at trial was commensurate with this aim, seeking only $5,000. Moreover, because the Court granted Defendant Cupp's renewed motion for judgment as a matter of law, finding that he was entitled to qualified immunity, Plaintiffs' awards have already been reduced by half: from $5,000 to $2,500. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 220; *see also Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 222. The Court finds that it would be contrary to the interest of justice to reduce these awards still further, by requiring Plaintiffs to shoulder the entire burden of litigating a case that benefited others. The Court thus finds this prong satisfied.[4]

---

[4] In the alternative, Defendants also briefly ask the Court to exercise its discretion to decline to award fees, even if Plaintiffs satisfy the requirements of § 1021.5, "given the limited success at trial." *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 224 at 12–13. Although Defendants do not elaborate, the Court assumes that Defendants are referencing the modest monetary awards that

United States District Court
Northern District of California

**d. Reasonableness of Fees**

Having found that Plaintiffs are eligible to receive attorneys' fees under § 1021.5, the Court must determine in its discretion what, if any, fees to award. Defendants do not challenge Plaintiffs' lodestar calculations under § 1021.5, and instead argue only that the Court should reduce the fees because they are excessive when compared to the damages awards. *See, e.g.*, *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 224 at 15.

The Court applies the lodestar method to calculate the fees to be awarded under § 1021.5. *See Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 448–49 (Cal. Ct. App. 1998) ("[T]he California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation"). Under the lodestar method, the Court starts with the "lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney involved in the presentation of the case." *See Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 579 (Cal. 2004), *as modified* (Jan. 12, 2005) (quotation omitted). The California Supreme Court has "expressly approved the use of prevailing hourly rates as a basis for the lodestar." *Id.* Once the Court determines the lodestar amount, it may, in "rare" and "exceptional" cases, adjust the lodestar upward or downward "using a 'multiplier' based on factors not subsumed in the initial calculation." *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (Cal. 2001) (holding that court is not required to apply a multiplier to basic lodestar figure but retains discretion to do so).

As an initial matter, the Court concludes that the fees and expenses requested by Plaintiffs are reasonable under California's lodestar method. Plaintiffs have submitted declarations and billing records from both law firms that represented Plaintiff Cisneros and Plaintiff Manriquez. Counsel reviewed the billing records to ensure charges were not duplicative or excessive, and those declarations and records document the requested (1) 1,209.50 hours of time spent by Reed Smith LLP for Plaintiff Cisneros, and a lodestar of $454,137.30, *see Cisneros*, No. 16-cv-0735-

---

Plaintiffs received in these cases. But as the Court has already explained, Plaintiffs' success at trial cannot be fully measured by their monetary awards. They were seeking to hold Defendants accountable for their actions, and they did.

HSG, Dkt. No. 223-1 at ¶¶ 6–18, Dkt. No. 223-2, Ex. 1; and (2) 1,115 hours of time spent by Singleton Law Firm, A.P.C., and a lodestar of $467,425, *see Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 225-1 at ¶¶ 3–18, & Ex. D, Dkt. No. 225-2. Counsel's rates include $425 to $600 per hour for partners; $395 to $425 per hour for senior associates; $395 per hour for junior associates; and $200 per hour for legal assistants, paralegals, and research assistants. The Court finds that these rates are consistent with prevailing rates in this district. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 223 at 6–7 (collecting cases); *Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 225 at 15–16 (same). Having reviewed these records in detail, the Court finds that Plaintiffs' lodestar calculations are reasonable given the rigorous litigation required in these cases. Defendants presented a robust defense, litigating through trial.

Nevertheless, the Court is cognizant that counsel are seeking fees that are approximately 180 times the awards that Plaintiffs received. And in exercising its discretion to award attorneys' fees, the Court seeks to balance the interests of fairness and proportionality.

Having considered these interests, the Court extends its sincere thanks to Reed Smith LLP, counsel for Plaintiff Cisneros. The importance of bridging the justice gap for indigent or low-income individuals cannot be overstated. Here, counsel's willingness to represent Plaintiff Cisneros *pro bono* ensured that he obtained meaningful access to the courts. And thanks to counsel's efforts, Plaintiff prevailed at trial. However, the Court declines to award attorneys' fees under the circumstances. As detailed above, the Court understands the broader import of Plaintiff's verdict. But his monetary award was still modest at $2,500. The Court also finds it relevant that Reed Smith represented Plaintiff Cisneros in this matter *pro bono*, and is a large law firm with over 1,500 lawyers in 32 offices across the United States, Europe, the Middle East, and Asia. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 223 at 5. To be sure, representing a party *pro bono* does not, on its own, preclude counsel from recouping attorneys' fees. *See* General Order No. 25. But the Court finds it relevant that counsel offered their services with the expectation that doing so was "for the public good," rather than as an ordinary paid retention. Moreover, given the size and reputation of the firm, representing Plaintiff Cisneros did not jeopardize the profitability of the firm. The firm, with the help of other attorneys, could continue its work for existing clients

13

and develop new business while litigating this case. Again, the Court deeply appreciates Reed Smith's zealous advocacy and professionalism, and very much hopes counsel will continue to provide high-quality *pro bono* legal representation in future cases.

As to counsel for Plaintiff Manriquez, the Court finds it significant that Singleton Law Firm represented Plaintiff pursuant to a contingency fee agreement in which counsel could elect to take only those attorneys' fees awarded by the Court. *See Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 225-1 at ¶ 19, & Ex. E. Thus, awarding attorneys' fees in this case would ensure that Plaintiff Manriquez receives his full $2,500 verdict. Moreover, the Court notes that Singleton Law Firm is a small firm, with fewer than 30 attorneys across nine offices in California. There was, therefore, a significant tradeoff involved in spending over 1,100 hours to represent Plaintiff in this case. Still, given the relatively small monetary award at issue, the Court finds that some reduction in counsel's lodestar is appropriate.

Although the Court declines Defendant's invitation to limit the total award of attorneys' fees under § 1021.5 to the PLRA maximum,[5] the Court finds the PLRA instructive in evaluating what constitutes proportional and fair fees in this case. This is particularly true here because Plaintiff Manriquez is a prisoner at Pelican Bay and, absent the state court negligence claims, his case would be subject to the PLRA. Under the PLRA, "[n]o award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). Accordingly, "the hourly rate used as the basis for a fee award [under the PLRA] is limited to 150 percent of the hourly rate used for paying appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A (the 'CJA rate')." *See Kelly*, 822 F.3d at 1099–100. The relevant CJA rate is currently $155 per hour,[6] and 150% of that rate is $232.50 per hour. Using this rate, Plaintiff's 1,115 hours of work would yield $259,237.50 in attorneys' fees. The Court finds that these

---

[5] The Court again notes that the PLRA does not apply any limits to awards in this case under § 1021.5.
[6] *See* UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, Criminal Justice Act ("CJA"), https://www.cand.uscourts.gov/about/court-programs/criminal-justice-act-cja/cja-compensation-rates/ (last visited February 1, 2021).

reduced fees are more proportionate to the award that Plaintiff Manriquez obtained at trial, while still acknowledging the high quality of counsel's work and the significant risk that counsel assumed in taking this case on contingency.

The Court understands that the hours spent by the Singleton Law Firm in this case were for both state and federal law claims, but as noted by the Supreme Court, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The Supreme Court noted that in such circumstances, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Differentiating time spent between the state and federal law claims is particularly difficult here, where Defendants were found liable for both state and federal claims based on the same facts. Again, the Court finds that counsel for Plaintiff Manriquez provided skilled representation, which was essential for Plaintiff to successfully litigate his claims. Because of the significant time devoted to this case, counsel no doubt was prevented from taking other cases on behalf of paying clients. The Court thus finds in its discretion, and based on the totality of circumstances, that counsel for Plaintiff Manriquez is entitled to $259,237.50 in attorneys' fees.

**B.    Section 1988**

Plaintiffs seek, only in the alternative, attorneys' fees under § 1988.

**i.    Legal Standard**

Section 1988 provides that a court may, "in its discretion," award a "reasonable attorney's fee" to a "prevailing party" in a suit brought under various federal statutes, including 42 U.S.C. § 1983. *See* 42 U.S.C. § 1988(b). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (quotation omitted). It is well settled that the amount of a reasonable fee award under § 1988 must be determined on a case-by-case basis in light of several factors, *see id.* at 429–30, the "most critical" of which "is the degree of success obtained," *id.* at 436. "The purpose of § 1988 is to ensure 'effective access to

1   the judicial process' for persons with civil rights grievances," *id.* at 429 (quoting H.R.Rep. No.
2   94–1558, p. 1H.R.Rep. No. 94–1558, p. 1 (1976)), and thus to "deter civil rights violations and
3   encourage access to the courts to redress often economically unviable injuries to fundamental
4   rights," *Bravo v. City of Santa Maria*, 810 F.3d 659, 668 (9th Cir. 2016).

5       "To determine the amount of a reasonable fee, district courts typically proceed in two
6   steps: first, courts generally apply the lodestar method to determine what constitutes a reasonable
7   attorney fee; and second, the district court may then adjust the lodestar upward or downward based
8   on a variety of factors, including the degree of success obtained by the plaintiffs." *See Bravo*, 810
9   F.3d at 665–66.

10      However, the PLRA alters the lodestar method in prisoner civil rights cases in three
11  fundamental ways. *First*, rather than hours reasonably expended in the litigation, the hours used
12  to determine the fee award are limited to those that are (1) directly and reasonably incurred in
13  proving an actual violation of the plaintiff's rights, and (2) either proportionately related to court-
14  ordered relief or directly and reasonably incurred in enforcing such relief. *See* 42 U.S.C.
15  § 1997e(d)(1). *Second*, and critically in these cases, the total amount of the attorneys' fees award
16  associated with the monetary judgment is limited to 150 percent of the judgment. *Id.*
17  § 1997e(d)(2); *see Jimenez v. Franklin*, 680 F.3d 1096, 1100 (9th Cir. 2012). *Third*, the hourly
18  rate used as the basis for a fee award is limited to 150 percent of the hourly rate used for paying
19  appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A (the "CJA rate"). *See* 42
20  U.S.C. § 1997e(d)(3).

21      **ii.**   **Discussion**

22      The Court understands that Plaintiffs disagree with the Ninth Circuit's interpretation of 42
23  U.S.C. § 1997e(d)(2). However, Plaintiffs appear to recognize that the Court is nevertheless
24  bound by the Ninth Circuit's holdings, and thus raise arguments about whether the total amount of
25  attorneys' fees should be limited to 150 percent of any monetary judgment solely to preserve them
26  for appeal. *See, e.g.*, *Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 225 at 17. Accordingly, the
27  Court does not address Plaintiffs' arguments about the proper interpretation of § 1997e(d)(2).
28  Still, the Court emphasizes that the PLRA was not intended to discourage non-frivolous lawsuits,

and competent counsel should not be discouraged from representing prisoners in meritorious cases. *See, e.g.*, *Woods*, 722 F.3d at 1182.

The Court finds that Plaintiffs' counsel are eligible for attorneys' fees under § 1988 because Plaintiffs prevailed on their Eighth Amendment claims against Defendant Vazquez. Such fees, however, are limited under the PLRA. Because the jury awarded $1,500 to each Plaintiff for their Eighth Amendment claims, Plaintiffs' attorneys' fees would be capped at $2,250 (150% x $1,500). Moreover, the PLRA requires that "[w]henever a monetary judgment is awarded," "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant." 42 U.S.C. § 1997e(d)(2). The Supreme Court has interpreted this to mean that "district courts must apply as much of the judgment as necessary, up to 25%, to satisfy an award of attorney's fees." *See Murphy v. Smith*, 138 S. Ct. 784, 786–90 (2018). Thus, were the Court to award attorneys' fees under § 1988, Plaintiffs would be responsible for $562.50 of the fee award (25% x $2,250), and Defendants would be responsible for the balance of $1,687.50. As to Plaintiff Manriquez, the Court finds that such fees are duplicative of the fees awarded under § 1021.5. And as to Plaintiff Cisneros, the Court declines to exercise its discretion to award any fees under § 1988. As explained above, the Court does not find that the interest of justice is served by requiring Plaintiff Cisneros to pay any portion of the fees from his modest award.

//
//
//
//
//
//
//
//
//
//

17

### III. CONCLUSION

Accordingly, the Court **DENIES** Plaintiff Cisneros' motion for attorneys' fees and **GRANTS IN PART** Plaintiff Manriquez's motion for attorneys' fees. Defendants are ordered to pay the following reasonable attorneys' fees within 30 days of the date of this order:

- $259,237.50 in attorneys' fees to Plaintiff Manriquez as a prevailing party under California Code of Civil Procedure § 1021.5.

**IT IS SO ORDERED.**

Dated: 2/3/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge